And we'll move on to the next case, Zirogiannis v. Seterus. May it please the Court, Counsel, I am Daniel A. Edelman representing Mr. Zirogiannis. Seterus sent him a form initial collection letter, Exhibit A, to the amended complaint seeking to collect a residential mortgage loan. It states that, quote, as the servicer and debt collector of loan number such and such, we will be working with you on behalf of your creditor, Fannie Mae, going forward, close quote. It then lists unpaid principal of over $271,000. What is inaccurate about the letter? The letter gives a number but fails to state a complete number. It says that this may include costs which, that there may be, quote, costs that have not yet been paid by your prior servicer, close quote. Those costs of necessity exist at the time the letter is sent. They are not disclosed. Their magnitude is not indicated. You're saying that the amount, that that additional amount had been incurred and was fixed. It wasn't just possibly to be incurred in the future. And, therefore, it was an ascertainable amount of the debt. Is that correct? Absolutely. The letter is ambiguous as to whether they exist, whether they don't exist. But what is clear is that the bottom line is not necessarily the complete amount of the debt. And under Miller . . . Do you quarrel with the inclusion, though, of the reference to and future costs that may be necessary? Because surely . . . We do not. You do not. So your point is that the amount of the debt is inaccurate because of this element that is identified but isn't set to dollars. And that was knowable. Is that correct? Absolutely. Under Miller, Avila, and Carlin v. Davidson, it is not appropriate to send a letter which says that it is, in effect, at least this much. It may be more. We're not telling you how much. But I guess what I'm trying to understand is it clearly says that there may be future costs that become necessary. We don't know what those are yet. When the time comes and you want to pay this off, you make the phone call and you get the payoff amount, and that will include any additional costs. That's one thing. Are you saying, or does the complaint allege, that at the time, there were already costs incurred that were not disclosed? We don't know. The letter says there may be such costs that have already been incurred, and we have not asked for a candle. Where does it say that? It says a payoff amount might include additional third-party costs that have not yet been paid. I mean, where is there any suggestion that there are costs already paid that we have not disclosed? A payoff amount might include additional third-party costs that have not yet been paid by your prior servicer. Since Cedras has just gotten servicing of this loan, these are costs which were incurred by its predecessor. They exist. That haven't been paid yet, so they're not due yet because they haven't been, I mean, he does not owe them yet. They're not part of the debt yet because the servicer hasn't paid them yet. Once the servicer pays them, then the servicer looks to the debtor for reimbursement. But until the servicer pays them, how can there be a claim for reimbursement from the debtor? The prior servicer has incurred them. They are owed by the prior servicer. They are knowable. They can be added to the debt. The internal bookkeeping is not something that is chargeable to the debtor. I mean, this discloses a fair amount of information, the principle, the interest, overdraft, the late charges, other fees, and I guess are you aware of expenses that were incurred that should have been disclosed here that were not? It's not alleged and is not in the record one way or the other. The violation alleged is simply that the letter states you owe. Do you think that this gives a reasonable consumer fair notice that there might be additional costs that are incurred for which the debtor would be liable? Existing costs. It does indicate that. That's the problem with the letter. If the costs have, if the services or items have already been incurred and are already knowable, the prior servicer has already received any such services, then the amount needs to be included in the letter. So you're saying that's a knowable item. Absolutely. Because the relationship with the prior servicer has ended and so that Ceteris should have ascertained that amount and included it in the amount of the debt. Absolutely, Your Honor. Regardless of how the prior services were dealing with its bookkeeping. Correct. And are you saying also that because it's not so clear that it was maybe confusing to the average consumer? To the unsophisticated or least sophisticated consumer, yes. It is at a minimum ambiguous as to whether the total amount of your debt is in fact the 424,000 number or a significantly larger number. You just cannot determine from this. What other significant costs could there be? Additional foreclosure and legal expenses, advances for taxes. That were already incurred? Absolutely. How could there be foreclosure fees for a lawyer at this point? Well, the letter discloses existing foreclosure expenses of over $2,600. As indicated by a proposed amendment, the loan wasn't foreclosure. There could easily have been significant additional expenses which to be added to that amount, you simply cannot determine from the letter and that is what the problem is. All right. Thank you, Your Honors. I will reserve the remainder of my time. Yes. Good morning, Your Honors. May it please the Court. My name is Lisa Freed. I'm here today on behalf of the appellee, Ceteris. Your Honors, as we argued in our brief, the District Court correctly dismissed this case with prejudice because the plaintiff simply did not allege that the loan was in default at the time that Ceteris began servicing it. However, even if the Court disagrees with that view and it appears as though the Court may since it seized upon our next argument, the debt validation notice in this case simply does not violate the FDCPA and there is nothing that the plaintiff could do in amending his complaint that would change that fact. Let me ask about the first argument. It seemed to me that you were arguing that it's not apparent that the loan was in default or hadn't been sufficiently alleged, but there are foreclosure costs that appear on this statement. Why would foreclosure costs appear with respect to a loan that was not in default? They probably wouldn't, Your Honor. And I don't think our argument is that it may not be apparent from certain documents in the record that this loan may have been in default at that point. Our argument instead, which is precisely what the trial court ruled and which is an argument that it seems this Court embraced in the Roth decision, is that it was not the judge's job to search the record for that fact and that instead plaintiffs had an obligation to allege that the loan was in default at the time that they filed their complaint. In fact, as the Court undoubtedly is aware, they had two opportunities to do that and while it is absolutely beyond dispute that foreclosure fees are reflected on this document, the judge needn't have looked that far and it was completely appropriate to dismiss this case with prejudice for that reason. And turning to the notice itself, we've just been focusing on the phrase that the payoff amount might include additional third-party costs that have not yet been paid by your prior servicer. So Ceteris took over from a prior servicer, is that correct? That's correct, Your Honor. And it seems to me that it would be knowable to Ceteris whether there in fact were such amounts that had been incurred by the prior servicer since that relationship had ended when Ceteris took over. And this isn't a future contingency, unlike the following phrase that refers to future costs that may be necessary, which of course were unknowable at the time of the notice. But do you contend that that was not a knowable fact to Ceteris? I don't contend that, Your Honor. Instead, I would state the following. As an initial point, plaintiff has really mischaracterized or at least articulated language that is not actually on the face of this statement in referencing payments that may already have been incurred by the prior servicer. I believe the court itself has already picked up on that fact. So there's no reverence. I actually have a problem with that, because it might include additional third-party costs that have not yet been paid by your prior servicer suggests to me, although we have an unsophisticated consumer in mind, who knows what I am in that regard, but in any event, that have been incurred then and not yet paid. It refers to paid because the relationship is over. So why isn't that part of the amount of the debt that Ceteris has an obligation to include in its accounting here? Two points on that. First goes to the point Judge Chin made earlier, which is that whether or not that is the case, the consumer, they are not looking to the consumer for that amount of any debt at this point. The total amount of the debt at this date is articulated here quite clearly. Why is this the total amount of the debt? If the prior servicer relationship is done and the prior servicer has incurred costs, for example, legal fees related to the foreclosure, this suggests that the amount of the debt in the statement is inaccurate. It is not inaccurate, Your Honor, and for that I would like to just briefly provide some context of what the purpose of this document even is. It's important to remember that this, as it says on its face, is not a payoff statement, nor is it a demand for payment. It says it quite clearly. And I will tell you why that's relevant, Your Honor. This is a debt validation notice, and the purpose of this is spelled out in the legislative history underlying Section 1692G of the FDCPA. In crafting this part of the FDCPA, what Congress was focused on are only two concerns. They were aimed at preventing debt collectors from dunning consumers who didn't owe a debt at all or coming after consumers who'd already paid their debts. But 1692G requires the debt collector to provide a written notice containing the amount of the debt, and this seems to me doesn't accomplish that. I would respectfully disagree with you, Your Honor, by saying it sets forth exactly what Seteris believes, based on its own books and its calculations, to be the amount of the debt as of the date of this notice. Now, importantly, this notice is required to be sent by a debt collector soon after it begins servicing the loan. I don't know, nor is it in the record, precisely what happens when the bookkeeping is transferred to a new servicer. However, to me, it is not unreasonable to believe that the prior servicer may not yet have notified Seteris of expenses it had paid out in connection with the loan immediately prior to the service transfer. I suspect that happens all the time. And in articulating quite clearly that there might be additional amounts owed, Seteris has done the best possible job that it can in doing exactly what it's required to in a 1692G notice, notifying the debtor that there is this debt out there, the identity of the creditor, and what the consumer needs to do if it cares to question this debt, question its validity, or come up with an actual final payoff. Well, you're saying it doesn't actually have to notify the consumer of the amount of the debt, but, you know, use whatever information it has reasonably available to it at the time. I'm saying that it is not required to notify the consumer of the amount the consumer needs to pay to pay off the loan in its entirety. Would you agree that it's not apparent to the consumer reading this that what this might be might include additional third-party costs that have not yet been paid by your prior servicer? That's likely to be marginal or significant or whatever. It's just whatever it turns out to be, we'll add it to the bill, and here's a way you can find out at some point. I'm not sure I understand the question. It's not entirely clear to me what an unsophisticated consumer would read this to mean. We believe and we argue that an unsophisticated consumer would read this notice and say, hmm, this seems to be a notification that I owe a debt to Fannie Mae, and it seems to tell me what steps I need to go to if I have any questions about this debt or if I would like to pay off the debt right now. I would also point out, Your Honor, that the Second Circuit has provided some guidance about what would render a notice of this type to be confusing, and this comes nowhere close to that. The two cases that the Second Circuit has decided that are most relevant here are the Carlin and the Avila cases, and all I would note, I realize I'm towards the end of my time here, is that the Carlin case actually would have done precisely what Your Honor is suggesting, and there a violation was found. The Carlin case involved a statement that said, you owe these fees, these fees, you may also owe all these future fees, and if you pay us by this date, you're off the hook. Well, the Court found that was a violation because a reasonable consumer looking at it wouldn't really know what it needed to do to satisfy the debt or if that number would change. Avila is at the other end of the spectrum. Avila characterized the amount of the debt as essentially a static number that would not be subject to change and said, you have to pay this amount, this is the amount of your debt right now, and a reasonable consumer could look at that and not appreciate that there would be more fees. What Ceteris did here is try to strike a very reasonable, common-sense middle ground, and to find this to be a violation would really place it between a rock and a hard place because it's difficult to know what it could have said in this letter that could be used for many, many loans and many, many consumers that would be more clear. It says, here is the amount of your debt as of this date. It is going to change, as any debt that isn't static does. Please contact to find out the amount of the debt. Am I right that it had a time limitation also, and so to the extent it needed to communicate further with a prior service or to know the exact amount of the debt, that that might not have been accomplishable within the time frame set by the statute? I can tell you, Your Honor, based on a lot of work that we do with loan servicers, that I think the real-time communication when a loan is service transferred, for good or for bad, unfortunately the transfer of information can take slightly longer than everyone would hope, and I don't frankly know that it would have been possible to nail down every last fee that had been charged in connection with this loan within the short period of time that Soteris had already been servicing this loan. And what was it? It had to give notice within five days or something? Five days of when it began. And, Your Honor, as I said, there is an incredibly clear indication here of what this consumer should do and can do if it has any questions, and it's difficult to see how Soteris could have handled this differently. This is Judge Winter. Could I ask a couple of questions? It seems to me the paragraph we're talking about, below is the amount, is entirely about payoffs, where the consumer seeks to eliminate a debt entirely, including making payments that are not yet due. Now, whatever, there might be penalty clauses in the complaint if you try to end the mortgage early. There are all kinds of other costs, but they're all future costs. How can, are you saying are you adequate that there may have been costs incurred by the prior services, incurred and paid, that aren't reflected? Is that what the paragraph means, or is it limited to payoffs, which are necessarily in the future? I apologize, Your Honor. I'm not sure which paragraph of the notice are you referring to. The one that begins below is the amount. Yes. Yeah. And it then goes on to say that it's not a payoff statement. That's correct. And it goes on to say, if you ask for a payment, a payoff, if you are seeking a payoff, this amount does not include costs that may be incurred as a result of the payoff. Right. What this language means, Your Honor, is that should the consumer want to immediately pay off his loan, having received this document, he can do one of two things. Either visit this website or call this phone number, and he will be issued a payoff statement that would include any additional fees. But then this does not include costs that have been paid by the prior servicer. My understanding of the language is that it would include costs paid by the prior servicer to the extent that those have already been communicated to and passed on to Soteris to be passed on to the consumer. And those should be listed here. Excuse me? Those should be listed here. And I believe they are, Your Honor. Exactly. The question, I guess, trying to follow up on Judge Winter's question, is if there were costs already incurred by the prior servicer, should they be disclosed here? If they have been communicated to Soteris, Your Honor, but there presumably is a limit to what Soteris can do to obtain information. If Soteris doesn't know about it, then Soteris can't do it. If Soteris has not been informed about it, it understandably cannot yet include it in the notice of this debt. But so the notice does include, though, reference a kind of X factor for past costs already incurred, as well as future costs yet to be incurred, which is what I think Judge Winter was asking about. Yes, inasmuch as there are already items in this itemized listing here that presumably relate to actions taken by the prior servicer. No, but I'm talking about the one sentence that Judge Winter was focusing on. It has X that have not yet been paid by your prior servicer, but have obviously been incurred by your prior servicer, because the prior servicer isn't in a position to incur anything more. Right. But just that Soteris doesn't know about them yet. That's correct. Or may not. Or maybe the website knows about them or the phone site, but they're not into the system that generated this letter. Exactly. So those are past costs. Yes. And then the Y factor is there may be other stuff in the future. Correct. But it provides. Can I go back to my questions? Yes. I mean, how can you say exactly? There isn't a word in here about costs that have been incurred and not paid. It says a payoff amount might include. This isn't about, this informs somebody of what may happen if they seek to pay it off. Yes, Your Honor, it does inform them of precisely what might happen if they seek to pay it off. At that point, Soteris will issue a payoff statement that will include all of those. All right, don't keep going. Since there hasn't been a request for a payoff, but since they're not talking to somebody who is thinking about paying it off, who may be thinking about it but hasn't asked for it, how can those costs have been incurred? For whatever it is worth, Your Honor, I can tell you, although it is not in the record, that there were no subsequent costs passed on to us, passed on to Soteris by the servicer. I didn't ask you that. Since there is all this confusion, why shouldn't the plaintiff have been allowed to amend the complaint? Your Honor, the plaintiff should not have been allowed to amend the complaint for the simple reason that the amendment would have been futile. And if I may, it may be helpful to spend a short moment on our standing argument, which is another reason why any amendment would have been futile. I didn't ask you about your standing argument. You may have used up your time. But I just don't see anything in here that suggests that two or three sentences there are about anything but a payoff, which can't have occurred by this very language. It's all looking forward. It's all looking to what might happen if you ask for a payoff in the future. We agree with that, Your Honor. Okay. Thank you. Thank you. We'll hear the rebuttal. Your Honor, the statutory requirement for sending the 1692G notice is it has to be done within five days of the first collection communication. Therefore, Ceteris can arrange its affairs so that it obtains the necessary information from the prior servicer and then engages in the first collection contact. The deadline is entirely within Ceteris' control. The first sentence of that paragraph says, below is the amount of your debt as of the date of this notice according to our records and information received from your prior servicer. That suggests to me that this is all that we know of based on the records that we have gotten. Obviously, if the servicer didn't send the information, then Ceteris wouldn't have it, but that's hardly Ceteris' fault. But I read this first sentence to be saying, based on the records that we have gotten from your prior servicer, this is what you owe, and then all the amounts are listed below. But it then contains a caveat saying, referring to the existence of, quote, third-party costs that have not yet been paid by your prior servicer, close quote. And that have not been sought. The prior servicer hasn't sought payment for them because otherwise they would have been in the records. And so, sure, there's a possibility that something else will come in, and then the prior servicer would have to send an update to Ceteris, presumably. And if that update came, then Ceteris presumably would have to send an update to the debtor. That's not how 1692G is supposed to work. First, it's quite clear. But I guess the question goes, what should Ceteris have done? I mean, Ceteris disclosed everything that it was aware of. There is this time constraint, and it gave the caveat that there may be future things that we don't know about yet. We're not complaining about future things. What else should have been in this notice? What else should have been in the notice? Ceteris should have obtained from the prior servicer or its principal the complete amount of the debt. The consumer is liable for that. It's apparent to me from this that Ceteris believed that it had that information. In other words, the prior servicer sends over its records. I mean, is Ceteris supposed to call them and say, is there anything more that you didn't send me, that you were supposed to send me? I mean, I'm not quite sure where you're going with this. Ceteris should have made certain that the number was complete, that if it wasn't complete, that no further prior amounts would be charged to the consumer and should not have sent a letter. Do you have any basis to assert that Ceteris knew that the information was not complete and that it should have gone back and asked for more information? We do not know. What we do know is that the letter itself references possible. I mean, is it plausible that Ceteris should have gone back and asked for more records even after the prior servicer had sent off its records and information? If Ceteris believed that the information was complete, it should not have sent a letter referencing, quote, third-party costs that have not yet been paid by a prior servicer, close quote. If Ceteris did not believe that the information was complete, it should have insisted on the provision of complete information before engaging in the first collection communication, which is what triggers the requirement that this notice be provided at all. It was entirely within the control of Ceteris. Does the statute require that a party in Ceteris' position provide a payoff amount? A different statute does. It is required by the Truth in Lending Act. It's generally required by state law as well.  I'm sorry, Your Honor? Even though they haven't been asked for it, that they provided? It has to be provided upon request under state and federal law. What is there in the final three sentences of that paragraph? We know the first sentence describes what the numbers listed specifically below say. What is there in the next three sentences that applies to anything but a payoff amount? The third-party costs that have not yet been paid by your prior servicer would necessarily apply both as of the date of this letter and to a payoff amount. You can't have it in one without the other, Your Honor. I see. You're saying that a reasonable consumer would read the words and future costs that may be necessary is not the object of third-party costs, is not the description of the third-party costs in a payoff. We are not complaining about future costs, that is, costs incurred after May 14, 2015, the date of this letter. We're complaining about the reference to third-party costs that have not yet been paid by your prior servicer. The letter, in effect, states that your debt is at least $424,338.97, and we're not telling you exactly how much in addition. Yes, but we know it's limited to payoff amounts. No, Your Honor. The payoff amounts necessarily include legal fees, advances for taxes. Excuse me. Let me read it to you, what it says. A payoff amount might include additional third-party costs that have not yet been paid. You're telling me that applies beyond payoff amounts? Absolutely. Third-party costs that have not yet been paid by your prior servicer are amounts for which the consumer is legally obligated and which of necessity exist on May 14, 2015. I'm sorry, you're reading it? Okay. I'm sorry, third-party costs that have not yet been paid by your prior servicer, that's the quote, necessarily exist as of the date of this letter. Only if a payoff amount has been asked for. No, Your Honor. The payoff amount is to be the consumer's legal obligation. This letter is also supposed to state the complete legal obligation of the consumer as of May 14, 2015. It does not. That's the violation of which we complain. I see my time is up, so unless there are some additional questions. We will reserve decision. Thank you, Your Honor.